UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHOSHANA MINZER, | : <br> : <br> : |
| Plaintiff, | : Case No. _____ <br> : <br> : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** <br> : **THE FEDERAL SECURITIES LAWS** |
| URSTADT BIDDLE PROPERTIES INC., KEVIN J. BANNON, RICHARD GRELLIER, CHARLES D. URSTADT, CATHERINE U. BIDDLE, NOBLE O. CARPENTER, JR., WILLIS H. STEPHENS, JR., WILLING L. BIDDLE, BRYAN O. COLLEY, and ROBERT J. MUELLER, | : <br> : JURY TRIAL DEMANDED <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : <br> : |

Plaintiff Shoshana Minzer ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.  This action is brought by Plaintiff against Urstadt Biddle Properties Inc. ("UBP" or the "Company") and the members of UBP's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which UBP will be acquired by Regency Centers Corporation ("Regency") through Regency's subsidiary Hercules Merger Sub, LLC ("Merger Sub") and UBP's subsidiaries

UB Maryland I, Inc. ("UB Sub I") and UB Maryland II, Inc. ("UB Sub II") (the "Proposed Transaction").

2.   On May 18, 2023, UBP and Regency issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated May 17, 2023 (the "Merger Agreement").  Under the terms of the Merger Agreement, holders of UBP common stock will receive 0.347 newly-issued shares of Regency common stock for each share of UBP common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $1.4 billion.

3.   On July 12, 2023, UBP filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that UBP stockholders vote in favor of the Proposed Transaction, omits, or misrepresents material information concerning, among other things: (i) UBP's and Regency's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Eastdil Secured Advisors LLC ("Eastdil").  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as UBP stockholders need such information to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4.   In short, unless remedied, UBP's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, UBP's common stock trades on The New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of UBP.

9. Defendant UBP is a Maryland corporation, with its principal executive offices located at 321 Railroad Avenue, Greenwich, CT 06830. The Company is a self-administered equity real estate investment trust which owns or has equity interests in dozens of properties containing several million square feet of space. UBP's common stock trades on The New York Stock Exchange under the ticker symbol "UBP."

10. Defendant Kevin J. Bannon ("Bannon") has been a director of the Company since 2008.

11. Defendant Richard Grellier ("Grellier") has served as a director of the Company since 2011.

12. Defendant Charles D. Urstadt ("Urstadt") is Chairman of the Board and has been a director of the Company since 1997.

13. Defendant Catherine U. Biddle ("Catherine Biddle") has been a director of the Company since 2013.

14. Defendant Noble O. Carpenter, Jr. ("Carpenter") has been a director of the Company since 2016.

15. Defendant Willis H. Stephens, Jr. ("Stephens") has been a director of the Company since 2019.

16. Defendant Willing L. Biddle ("Willing Biddle") has been President of the Company since 1996, Chief Executive Officer ("CEO") since 2013, and has been a director since 1997.

17. Defendant Bryan O. Colley ("Colley") has been a director of the Company since 2015.

18. Defendant Robert J. Mueller ("Mueller") has been a director of the Company since 2004.

19. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20. Regency is a preeminent national owner, operator, and developer of shopping centers located in suburban trade areas with compelling demographics. Regency's portfolio includes thriving properties merchandised with highly productive grocers, restaurants, service providers, and best-in-class retailers that connect to their neighborhoods, communities, and

customers. Operating as a fully integrated real estate company, Regency is a qualified real estate investment trust ("REIT") that is self-administered, self-managed, and an S&P 500 Index member.

21. Merger Sub is a Maryland limited liability company and a direct, wholly-owned subsidiary of Regency.

22. UB Sub I is a Maryland corporation and a direct wholly owned subsidiary of UBP.

23. UB Sub II is a Maryland corporation and a direct wholly owned subsidiary of UB Sub I.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

24. UBP engages in the ownership of real estate investments, which consist principally of investments in income-producing properties, with primary emphasis on neighborhood and community shopping centers in the metropolitan New York tri-state area outside of the City of New York. As of October 31, 2022, the Company owned or had equity interests in 77 properties comprised of neighborhood and community shopping centers, office buildings, single tenant retail or restaurant properties and office/retail mixed use properties located in three states, containing a total of 5.3 million square feet of gross leasable area ("GLA").

25. The Company also owns and operates self-storage facilities at two of its retail properties. The self-storage facilities are managed by Extra Space Storage, a publicly traded REIT. One of the self-storage facilities is located in the back of UBP's Yorktown Heights, NY shopping center in below grade space with approximately 57,300 square feet of GLA. The second self-storage facility is located adjacent to UBP's Dock shopping center in Stratford, CT with approximately 90,000 square feet of available GLA. In addition, the Company is close to completion on a third self-storage facility, which is located at its Pompton Lakes shopping center

and will have approximately 60,100 square feet of available GLA. In addition to UBP's business of owning and managing real estate, the Company is also involved in the beer, wine and spirits retail business, through ownership of six subsidiary corporations formed as taxable REIT subsidiaries.

26.  On June 1, 2023, UBP announced that its Board of Directors declared quarterly dividends on the Company's Class A Common Stock and Common Stock. The dividends were declared in the amounts of $0.2083 for each share of Class A Common Stock and $0.1875 for each share of Common Stock, payable July 6, 2023, to stockholders of record on June 14, 2023. The dividends represent the 214th consecutive quarterly dividend on common shares declared since the Company began operating in 1969.

27.  On June 7, 2023, UBP announced its second quarter 2023 financial results and business development highlights. Total revenues for the quarter were $73.4 million, compared to $71.6 million in the prior year period. Defendant Willing Biddle commented on the results, stating:

> We are continuing to see a rebound in our tenants' businesses and increasing demand for vacant space at our properties. Our leasing and management teams are very busy working to deliver space for our new tenants, and we have a strong pipeline of new leases that includes 126,400 square feet in the lease negotiation phase and another 141,400 square feet in the letter of intent phase. Unfortunately, our quarterly financial results dipped when compared with the last few quarters, but this was expected as we took back the 47,000 square foot Bed Bath and Beyond space at our Ridgeway Shopping Center in Stamford, CT right after our first quarter end when that lease expired. This created a reduction in second quarter FFO of approximately $440,000. However, in May, we signed a new lease with Burlington to lease the majority of the former Bed Bath and Beyond space, which we hope to deliver in the later part of this calendar year, and we are also in negotiations with two tenants to lease the balance of the space. This quarter, we leased 25,600 square feet of new leases at base rental increases averaging 2.9%. We also renewed 103,800 square feet of existing tenant leases at base rental decreases averaging 3.6%, but that decline was predominantly related to three leases that were renewed at significantly lower rents in order to get more term on each of these renewals. With these three leases removed, average base rent on renewals would have increased by 2.1%. We believe the increasing demand for space, coupled with decreasing supply, will continue to have a positive effect on our occupancy and

rents going forward. We continue to be grateful for the tremendous efforts and perseverance of our team, as well as that of our tenants, who have worked together to get through the challenges of the last three plus years.

Although our earnings and FFO have returned to pre-pandemic levels, we believe there is still room to grow the income of our existing portfolio as we fill vacancies with new tenants. We are currently working on several significant leases that we hope to sign and announce in the upcoming quarters. Our collection rate on rents billed has returned to pre-pandemic levels, and almost all of our tenants are able to pay rent without assistance. Our strong balance sheet and liquidity remain the underpinnings of our company's success, and well-located, grocery-anchored community and neighborhood shopping centers have proven to be solid investments in good times and bad. Due to our long-term strategy, 87% of our properties, measured by square footage, are anchored by grocery stores, wholesale clubs or pharmacies, and these businesses remained solid throughout the pandemic.

**The Proposed Transaction**

28. On May 18, 2023, UBP and Regency issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> JACKSONVILLE, Fla. and GREENWICH, Conn. (May 18, 2023) – Regency Centers Corporation ("Regency") (Nasdaq: REG) and Urstadt Biddle Properties Inc. ("Urstadt Biddle" or "UBP") (NYSE: UBA and UBP) today announced that the two companies have entered into a definitive merger agreement (the "Agreement") by which Regency will acquire Urstadt Biddle in an all-stock transaction, valued at approximately $1.4 billion, including the assumption of debt and preferred stock. The combined company is expected to have a pro forma equity market capitalization of approximately $11 billion and total enterprise value of approximately $16 billion.
>
> Under the terms of the Agreement, Urstadt Biddle's Class A Common (UBA) and Common (UBP) stockholders will receive 0.347 of a newly-issued REG share for each UBA or UBP share they own, representing a total consideration of approximately $20.40 per share based on Regency's closing share price on May 17, 2023. Upon closing, Regency and Urstadt Biddle shareholders will own approximately 93% and 7% of the combined company, respectively. The respective Boards of Directors of both Regency and Urstadt Biddle have each approved the transaction.
>
> "We couldn't be more excited about the combination of our two great companies," said Lisa Palmer, President and Chief Executive Officer of Regency. "The portfolio that Urstadt Biddle has carefully assembled over more than 50 years offers a highly aligned demographic and merchandising profile to Regency. Both companies have a successful track record of owning and operating best-in-class

grocery-anchored neighborhood and community centers in premier suburban trade areas, and we look forward to the synergies and growth opportunities that this transaction will offer to the combined shareholder base."

"Regency has a long, successful history of being a sector and industry leader in the ownership and operation of high-quality shopping centers around the country, with one of the best-regarded teams in the REIT industry," said Willing L. Biddle, President and CEO of Urstadt Biddle.  "I have no doubt that our portfolio will be in great hands under Regency leadership, and as a future Regency shareholder I look forward to the scale and platform benefits that the combination of our two companies will provide."

The combined portfolio will be comprised of 481 total properties encompassing more than 56 million square feet of gross leasable area.  The combination is expected to provide several strategic benefits, including:

- **Strategically Aligned Portfolios of High-Quality, Open-Air Shopping Centers**: The transaction grows the combined company's footprint of high-quality, grocery-anchored shopping centers in premier suburban trade areas while enhancing Regency's overall geographic diversification and maintaining a strong tenant roster.
- **Best-In-Class Operating Platform Drives Value Creation**: Regency's sector-leading national leasing and asset management platform is positioned to unlock value within the combined portfolio.
- **Positive Financial Benefit**: The transaction is expected to be immediately accretive to Core Operating Earnings (defined below), including approximately $9 million of annual cost savings benefit.
- **Maintains Balance Sheet and Liquidity Strength**: The all-stock transaction preserves Regency's well-capitalized and flexible balance sheet to support continued growth as pro forma leverage remains at the low end of Regency's target range of 5.0x – 5.5x.

UBP is expected to align the timing of its quarterly dividend payments to Regency's during the pendency of the merger.  The transaction is expected to be non-taxable to Urstadt Biddle shareholders.

The transaction is currently expected to close late in the third quarter or early in the fourth quarter of 2023, subject to the receipt of approval of UBA and UBP shareholders and satisfaction of other customary closing conditions.  Stockholders of UBP holding approximately 68% of UBP's voting rights have entered into an agreement to vote in favor of the transaction.  There are no anticipated changes to Regency's executive management team or Board of Directors.

RBC Capital Markets and Wells Fargo Securities are acting as financial advisors and Wachtell, Lipton, Rosen & Katz is serving as legal advisor to Regency Centers.

Eastdil Secured and Deutsche Bank are acting as financial advisors and Hogan Lovells US LLP is serving as legal advisor to Urstadt Biddle.

**Insiders' Interests in the Proposed Transaction**

29. UBP insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of UBP.

30. Notably, if they are terminated in connection with the Proposed Transaction, UBP's named executive officers will receive substantial cash severance payments, as set forth in the following table:

| Named Executive Officer | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($) [3] | Nonqualified Deferred Compensation ($)[4] | Total ($) |
|---|---|---|---|---|---|
| Willing L. Biddle | $7,113,266 | $17,828,775 | $ 21,185 | 51,353 | $25,014,580 |
| John T. Hayes | $2,247,018 | $ 1,665,150 | $ 28,596 | 1,003 | $ 3,941,767 |
| Charles D. Urstadt | $ 615,609 | $ 502,320 | $ 20,728 | — | $ 1,138,657 |
| Stephan A. Rapaglia | $2,247,018 | $ 1,763,100 | $ 28,596 | 1,003 | $ 4,039,717 |
| Miyun Sung | $2,213,358 | $ 1,371,300 | $ 11,262 | — | $ 3,595,920 |

**The Proxy Statement Contains Material Misstatements and Omissions**

31. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) UBP's and Regency's financial projections; and (ii) the inputs and assumptions underlying the financial analyses performed by the Company's financial advisor Eastdil. Accordingly, UBP stockholders are being asked to vote in favor of the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning UBP's and Regency's Financial Projections*

32. The Proxy Statement fails to disclose material information with respect to UBP's and Regency's financial projections.

33. For example, with respect to the Urstadt Biddle Forecasts the Proxy Statement fails to disclose the line items underlying Cash NOI, Cash EBITDA, and Unlevered Free Cash Flow.

34. Additionally, with respect to the Regency Forecasts the Proxy Statement fails to disclose the line items underlying Total NOI and Free Cash Flow.

35. The omission of this information renders the statements in the "Certain Urstadt Biddle Unaudited Prospective Financial Information" and "Certain Regency Unaudited Prospective Financial Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act

*Material Omissions Concerning Eastdil's Financial Analyses*

36. The Proxy Statement also describes Eastdil's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Eastdil's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, UBP's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Eastdil's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to UBP's stockholders.

37. With respect to Eastdil's *Net Asset Value Analyses*, the Proxy Statement fails to disclose: (i) the total estimated value of UBP's cash, cash equivalents and other assets; (ii) the total estimated amount of UBP's liabilities, including total debt, outstanding contractual leasing costs, and other liabilities and estimated debt marked-to-market valuation; (iii) the total estimated value of Regency's ground-up development and redevelopment projects in progress, cash, cash

equivalents and other assets; and (iv) the total estimated amount of Regency's liabilities, including total debt and other liabilities and estimated debt marked-to-market valuation.

38. With respect to Eastdil's *Selected Publicly Traded Companies Analyses*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies analyzed.

39. With respect to Eastdil's *Discounted Cash Flow Analyses*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates used in the analyses; (ii) quantification of the inputs and assumptions underlying the residual capitalization rates used in the analyses; and (iii) the unlevered free cash flows that Regency is forecasted to generate during the last six months of calendar year ending December 31, 2023 through the full calendar year ending December 31, 2027.

40. The omission of this information renders the statements in the "Opinion of Urstadt Biddle's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

41. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff, and the other stockholders of UBP will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

42. Plaintiff repeats all previous allegations as if set forth in full.

43. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

44. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresents and/or omits material facts, including material information about (i) UBP's and regency's financial projections; and (ii) the inputs and assumptions underlying Eastdil's financial analyses. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

45. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

46. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

47. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

**COUNT II**

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

48.     Plaintiff repeats all previous allegations as if set forth in full.

49.     The Individual Defendants acted as controlling persons of UBP within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of UBP, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

52.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, UBP stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of UBP, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to UBP stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  August 3, 2023                                          **WEISS LAW**

By _/s/ Michael Rogovin_
Michael Rogovin
476 Hardendorf Ave. NE
Atlanta. GA 30307
Tel: (404) 692-7910
Fax: (212) 682-3010
Email: mrogovin@weisslawllp.com

*Attorneys for Plaintiff*